ISHEE, J., dissenting:
¶ 29. With respect to the majority, I must dissent. As noted previously, in order to prevail on his claim for workers’ compensation benefits, Ewing must prove by a preponderance of the evidence that he suffered “an accidental injury arising out of and in the course of his employment[,] and a causal connection between the injury and the claimed disability.” S. Miss. Elec. Power Ass’n v. Graham, 587 So.2d 291, 294 (Miss.1991) (quoting Narkeeta, Inc. v. McCoy, 247 Miss. 65, 70, 153 So.2d 798, 800 (1963)). Furthermore, Ewing must “establish every essential element of the claim[,] and it is not sufficient to leave the matter to surmise, conjecture[,] or speculation.” Id.
¶ 30. Ewing’s claims of injury and assertions as to the cause of the injuries are convoluted, at best. To reiterate, on October 6, 1997, Ewing saw Dr. Lott for low-back pain from an injury he claimed he sustained at work. The injury was never formally reported to Bryan Foods. However, the records of Bryan Foods’ EMT, Owens, show Ewing came to her approximately seven months later, on May 12, 1998, alleging low-back pain from having tripped on his shoelaces at work. Nevertheless, Bryan Foods had required Ewing to wear lace-free, slip-on rubber boots at work. Accordingly, Ewing’s claim that he tripped on his shoelaces gives rise to speculation since Ewing’s boots were lace free. Additionally, Ewing never mentioned to Owens the alleged 1997 incident he reported to Dr. Lott, which he claims resulted in similar low-back pain.
¶ 31. After visiting Owens, Ewing sought treatment from Dr. Eckman. On October 1, 1998, approximately five months after seeing Owens, Ewing reported to Dr. Eckman complaining of low-back pain that he asserted began when his forklift ran into a drain hole at work. Ewing did not tell Dr. Eckman about allegedly tripping on his shoelaces at work, nor did he mention the 1997 work injury of which he complained to Dr. Lott.
¶ 32. The first formal notification of Ewing’s injuries was delivered to Bryan Foods on June 22, 1999, when Ewing sent a demand letter seeking workers’ compensation benefits due to back and leg injuries supposedly sustained from lifting a heavy object at work. This was the first mention of any leg injuries and the first mention of any injuries sustained from lifting a heavy object. No note was made as to Ewing tripping on shoelaces or running his forklift into a drain hole.
*288 ¶ 38. In March and April of 2000, Ewing was involved in two motor-vehicle accidents. He admits to having sustained an injury to his back as a result of the March 2000 accident. On April 6, 2000, Ewing filed his first formal petition to controvert, claiming to have tripped on his shoelaces at work and injured his back. No mention was made of leg or knee injuries. Likewise, Ewing cited the back injury as being attributable to tripping on shoelaces, not lifting a heavy object, running his forklift into a drain hole, or being involved in a motor-vehicle accident. Finally, on May 21, 2001, Ewing filed his second petition to controvert, including an injury to his left-lower knee sustained from the alleged fall from tripping on his shoelaces.
¶ 34. I find Ewing’s failure to maintain consistency in his claims of incidents and injuries between 1997 and 2001 to be unsettling. Likewise, the AJ initially assigned to the case found that Ewing had failed to establish by the preponderance of the evidence that he had suffered compen-sable injuries related to his employment. Her ruling was based, in large part, on Ewing’s inability to connect his injuries to specific incidents at the workplace. As stated previously, to receive workers’ compensation benefits, a claimant must establish that the alleged injury arose out of and in the course of his employment without leaving any element subject to conjecture or speculation. Id.
¶ 35. The AJ’s 2006 dismissal was overturned by the full Commission, in part, on the theory that Ewing is mentally disabled. The full Commission determined that the Social Security Administration’s order resolved Ewing’s inconsistencies by showing he is “mentally inflicted.” However, the order is the only evidence in the record that mentions the possibility that Ewing is mentally incapacitated. Ewing has failed to claim a mental incapacity at any time other than through the order. Additionally, Ewing’s medical records, with regard to mental incapacity, were never submitted to the full Commission or the AJ. The order is merely a secondhand interpretation of supposed medical evidence to which neither Ewing’s doctors nor Bryan Foods’ counsel has been privy. While I recognize that the Workers’ Compensation Commission abides by relaxed rules of evidence, this seems largely unjust.
¶ 36. Ewing’s inconsistencies about his injuries and how he received his injuries should serve as a substantial basis to support the AJ’s original order denying Ewing’s claims. At present, I find that Ewing cannot meet his burden of proving by the preponderance of the evidence that his injuries were sustained at work since the injuries were reported at different and contradicting times, and the causes of the injuries were also reported in an inconsistent manner.
¶ 37. The majority places great emphasis on medical evidence in the record supporting the notion that Ewing actually sustained injuries. Nevertheless, the majority fails to recognize the legal requirement for Ewing to first prove a causal link between the injuries and his employment. See id. With due respect to the majority, our analysis at this time should not lend itself to determining the extent of Ewing’s injuries. Rather, we must first address the threshold question of whether his injuries are, in fact, work-related, as defined under Mississippi workers’ compensation laws. Since Ewing has yet to establish the causal connection required under the law, I find that Ewing has not presented this Court with a prima facie workers’ compensation claim.
¶ 38. However, should Ewing suffer from a verifiable mental condition that would relate to his inability to coherently *289 recount work events causing his injuries, I may view the case differently. Nonetheless, I cannot find from the evidence before us that Ewing is mentally inflicted. Likewise, I cannot determine that the full Commission was presented with sufficient evidence in the record before it to make such a finding.
¶ 39. The Social Security Administration’s order is simply not sufficient to establish a mental incapacity, and should not have been considered by the full Commission as substantive evidence of a mental disability. Again, the order is merely a secondhand opinion of medical records not provided to Bryan Foods or Ewing’s doctors involved in the present litigation. As such, in addition to Ewing not properly establishing a mental incapacity in the record, Bryan Foods was not provided any opportunity to rebut the notion of a mental incapacity.' Additional medical evidence regarding Ewing’s mental state is necessary to determine whether or not he has a viable claim for any compensable injuries. As such, I would reverse and remand this case for further findings on Ewing’s mental capacity as it relates to his claims for workers’ compensation benefits.
BARNES, J., JOINS THIS OPINION.